IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2026 FEB 26 AM 9: 39

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____CL_____

| | | |
|---|---|---|
| ALPACION MONREAL,<br>an Individual | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: ~~125-cv-856~~ |
| | § | |
| APPLIED MATERIALS INC.,<br>    a corportion | § | **1:26 CV 00450 DAE** |
| | § | |
| Defendants | § | |

**COMPLAINT**

**I. PARTIES**

1.    Plaintiff **Alpacino Monreal ("Plaintiff")** is an individual residing in Travis County,

Texas. Plaintiff is a former employee of Defendant Applied Materials, Inc., and at all relevant

times was employed by Defendant in Austin, Texas.

2.    Defendant **Applied Materials, Inc. ("Applied" or "Defendant")** is a corporation

organized under the laws of the State of Delaware with its principal place of business at 3050

Bowers Avenue, Santa Clara, California 95054. Applied Materials, Inc. conducts substantial

business in the State of Texas, including maintaining a major operational facility located at:

Applied Materials, Inc.
9700 U.S. Highway 290 East
Austin, Texas 78724

3.    Defendant Applied Materials, Inc. may be served with process through its registered

agent for service of process in Texas or through any officer or agent authorized to accept service

on its behalf.

**II. JURISDICTION**

4. This Court has subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331**, because Plaintiff asserts claims arising under the laws of the United States, including the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

5. This Court has supplemental jurisdiction over Plaintiff's related state-law claims, including breach of contract, pursuant to **28 U.S.C. § 1367**, because those claims form part of the same case or controversy.

6. Defendant Applied Materials, Inc. is subject to personal jurisdiction in this District because it conducts continuous and systematic business in Texas, maintains facilities and employees in this District, and the events giving rise to Plaintiff's claims occurred in this District.

### III. VENUE

7. Venue is proper in this Court pursuant to **28 U.S.C. § 1391(b)** because:

   a. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District;

   b. Defendant maintains a facility and conducts substantial business in this District; and

   c. Plaintiff was employed by Defendant in Austin, Texas, which is located within the Western District of Texas, Austin Division.

8. Venue is also proper under **42 U.S.C. § 2000e-5(f)(3)** because the unlawful employment practices alleged herein were committed in this judicial district and Defendant maintains an employment facility in this district.

### IV. AMOUNT IN CONTROVERSY

9. Plaintiff seeks recovery of damages including, but not limited to:

a. Back pay and front pay;
b. Lost wages and employment benefits;
c. Compensatory damages for emotional distress;
d. Contract damages arising from Defendant's breach of the Employment Agreement and incorporated HR policies;
e. Statutory damages and equitable relief;
f. Attorneys' fees and costs as permitted by law; and
g. Declaratory and injunctive relief.

10.     The amount in controversy exceeds **$75,000, exclusive of interest and costs,** and

therefore satisfies the jurisdictional requirements of this Court.

11.     Plaintiff seeks all relief available under federal and state law, including compensatory

damages, equitable relief, and all other remedies to which Plaintiff is entitled.

## V.  FACTUAL BACKGROUND

### A. The Parties and Governing Agreements

9.  Plaintiff **Alpacino Monreal** ("Plaintiff") was employed by Defendant **Applied Materials,**

**Inc.** ("Applied") as an Engineering Technician III in Austin, Texas.

10. On or about **September 28, 2021**, Plaintiff entered into a written **Employment Agreement**

with Applied governing the terms and conditions of his employment.The Employment

Agreement incorporated Applied's Human Resources ("HR") policies, including the **Open Door**

**Policy (HR Policy 6-01)** and the **Discipline, Job Performance, and Standards of Conduct**

**Policy (HR Policy 6-02),** which set forth mandatory procedures for discipline and termination.

11. The Employment Agreement included an arbitration provision governed by the Federal

Arbitration Act, which expressly preserved Plaintiff's right to file charges and communicate with

governmental agencies, including the Equal Employment Opportunity Commission ("EEOC")

12. On or about **October 8, 2021**, Plaintiff executed a separate written acknowledgment confirming receipt of and agreement to comply with Applied's HR policies, including HR Policies 6-01 and 6-02

**B. Performance History and Disciplinary Actions**

13. Throughout **2022**, Plaintiff performed his job duties while reporting to multiple supervisors and under evolving operational standards.

14. During 2022, Applied later alleged several interpersonal incidents involving Plaintiff; however, at least one such incident was reviewed by Human Resources, and Plaintiff was expressly informed that it **would not be placed in his personnel file and could not be used for disciplinary purposes**. In addition, Applied Human Resources reported to Plaintiff that they had a specific conversation with Casillas-Zaragoza for approximately Two (2) hour corrective action clarifying policies and the limitations regarding proper role of a supervisor regarding disciplinary actions that he was violating.

15. Despite this representation, Applied later relied on the same cleared or disputed incidents in support of adverse employment actions.

16. On or about **March 28, 2023**, Applied alleged that Plaintiff engaged in condescending/disrespectful conduct concerning a QA issue toward a peer that he had trained. Plaintiff disputes the allegation and alleges that no witnesses present at the time were interviewed as part of any investigation.

17. On or about **May 18, 2023**, Casillas-Zaragoza alleged that Plaintiff sent "inappropriate" instant messages about Casillas-Zaragoza to a coworker. Plaintiff diputes the characterization. Plaintiff addressed the issue with Management and Plaintiff was not disciplined by management

but Casillas-Zaragoza later reasserted modified his allegation due to inaccuracies. The alleged inappropriate messages were in a non-official employee chat application and were an effort of Plaintiff to get a position in another area where he did not have to deal with Casillas-Zaragoza and his violations of Applied policies and his inadequacies.

18. On **May 23, 2023**, Applied issued Plaintiff a **Written Warning** citing alleged violations of HR Policy 6-02 and warning that further violations could result in termination (03-230612-Notice-Termination Do…). The warning related to a conversation between Joanna Galindo (another QA co-worker) who did NOT file a complaint. When the issue was raised she was stationed overseas. In said conversation Joanna was insecure about her position and everyone else in QA and asked Plaintiff his opinion given his past experience. Plaintiff opined that based on his experience, QA are first on the staff-reduction shortlist. Casillas-Zaragoza violated HR policy initiating a complaint. Casillas-Zaragoza intentionally misrepresented the conversation to be demeaning of Joanna's work rather than management's perceived value of people in Joanna's position including Plaintiff.

19. The written warning also referenced two unidentified alleged incidents that were never defind and in violation of HR policy and procedures. Plaintiff was never provided with the opportunity to respond.

20. The written warning follows a complaint submitted to Manager Meriwether according to HR policy and procedure that Damen Bridgett physically assaulted Plaintiff in violation of HR Policy 6-02. The incident was witnessed by Joanna Galindo and Brittany Murray who signed statements. Director Mark Hamlin manager spoke to Plaintiff and in violation of HR Policy instructed Plaintiff not to report it to HR that he would handle it 'in-house'. Assault should have

been a fireable offense.  Instead Manager Meriwether took retaliatory action against Plaintiff, the assault victim.

21. The Written Warning relied in part on disputed and previously cleared incidents and did not provide Plaintiff and opportunity for a hearing or meaningful response as required by Applied's HR policies.

22. Prior to 2023, Plaintiff was assigned to the Quality Control Area ("QCA") without requesting or seeking that placement and without prior notice that such a group existed.

23. Rework the following in summary Plaintiff was hired to do test which at Applied is not the same role as QA/QCA.  Plaintiff was an Engineering Tech III.   He was told by Sr Techs that he was temporarily tasked with a special project of test cross-over to pre-inspect product.  He was not asked.  Later Management moved Plaintiff into QCA without informing Plaintiff of getting his approval.

24. At the time Plaintiff was assigned to QCA, **Diego Casillas-Zaragoza was not a supervisor** and did not hold supervisory authority over Plaintiff. **Diego Casillas-Zaragoza's** title was Team Coordinator and unique in that it gave the role of supervisor however none of the supervisory authority and was deemed equivalent to plaintiff's Engineering Technician III. Casillas-Zaragoza, Plaintiff's management, HR management and Director were aware of Plaintiff's respiratory and related medical issues resulting from long hours and stress resulting from lack of supervisory presence onsite they were also aware of the resulting ADA accommodations including no overtime, limited to 8 hours a day and 40 hours a week, and additional 15 min break if needed / necessary at anytime.

25. Before Mr. Casillas-Zaragoza obtained supervisory status in 2023, Plaintiff did not receive discipline for attendance, performance, or conduct issues and routinely handled floor-level decisions and issue resolution consistent with his role and experience.

26. After Mr. Casillas-Zaragoza obtained "supervisory" authority, Plaintiff experienced a material change in treatment, including increased scrutiny, shifting directives, and conflicting instructions regarding breaks, restroom use, and floor presence despite Mr. Casillas-Zaragoza's lack of floor presence which is reflective of his onsite attendance as well.

27. Plaintiff was expressly told by management that if he needed to use the restroom or a "break" he could do so; however, Plaintiff was later criticized for brief absences from the floor despite management's conflicting instructions and ADA accommodations.

28. Plaintiff alleges that management failed to consistently communicate or enforce uniform standards regarding breaks and floor presence, resulting in selective enforcement against Plaintiff.

**C. Medical Condition and Protected Activity**

29. During the relevant period, Plaintiff suffered from a heart-related medical condition and experienced significant workplace stress.

30. Plaintiff also contracted **COVID-19** and was placed on mandatory quarantine in accordance with public health guidance and company policy multiple times due to coworker exposure. Additionally, there were instances plaintiff was deemed to return early conflicting with established procedures.

31. Plaintiff alleges that he engaged in protected activity under the **Americans with Disabilities Act ("ADA")**, including seeking accommodation and medical leave, and that Applied was aware of his medical condition and related limitations.

32. In or about May 2023, Plaintiff requested a brief delay in providing medical documentation because he was out of work and awaiting results from his physician.

33. Less than fifteen (15) hours after that request, Plaintiff was summoned to a disciplinary meeting in which he was labeled "non-compliant." by both Mr Cassillas-Zaragoza and Manager Marlando Meriwether

34. During that meeting, Plaintiff presented medical results showing that he was undergoing evaluation for **potential heart failure**.

35. Plaintiff alleges that the same dates surrounding this disclosure of a serious medical condition were later relied upon by Applied as part of the rationale for his termination.  During his review, Mr Cassillas-Zaragoza presented a report comparing his total throughput over 8 hours to other QA employees working significantly more than 40 hours weekly and of 10 hour per day. Despite this fact the plaintiff's throughput was among the top 3 of his peers despite the extreme differences in changing responsibilities.

36. Plaintiff alleges that the close temporal proximity between his medical disclosure and subsequent discipline supports an inference of discrimination and retaliation under the ADA.

37.  Plaintiff alleges that a significant amount of the stress that caused his heart condition was caused by not having a supervisor and the constant pressure to pass product despite policies required for Applied's ISO certification relied on by its customers, users and their employees.

**D. Termination Without Contractually Required Process**

38. On a **Sunday immediately preceding Plaintiff's scheduled return from COVID quarantine**, Plaintiff was instructed by Applied not to report to work and was told he would receive a call the following day from representative Sabrina of HR.

39. On the following **Monday**, Applied terminated Plaintiff **by telephone**, without providing an in-person or virtual meeting, without allowing Plaintiff to respond to allegations, and without following the procedures set forth in HR Policies 6-01 and 6-02.

40. Applied informed Plaintiff that his termination was part of a "low performance initiative," notwithstanding the absence of a completed or fair performance-improvement process.

41. Applied's failure to provide notice, a meeting, or an opportunity to be heard constituted a deviation from its written HR policies and from the contractual framework governing Plaintiff's employment.

**E. Performance Review and Inconsistent Termination Rationale**

42. Applied subsequently issued a **2023 Performance Review** covering the period **November 1, 2022 through October 29, 2023**, rating Plaintiff as a "Limited Contributor"

43. (05-PerformanceReview-MonrealAlp...).

44. The Performance Review relied on disputed incidents, shifting performance metrics, and factual assertions that Plaintiff contemporaneously rebutted in writing. Mr Cassillas-Zaragoza also determined Plaintiff's job roles on his own without prior notice to Plaintiff in violation of HR policy.  In violation of HR Policy Cassillas-Zaragoza created his own performance metrics without prior notice to Plaintiff.  Cassillas-Zaragoza  then proceeded to use these metrics during Plaintiff's review which was performed without additional management in violation of HR

Policy. The modifying job roles and descriptions and metrics were inconsistent with established Applied Materials documentation.

45. Plaintiff alleges that the performance metrics used to justify discipline and termination were materially flawed and selectively applied. Mr Cassillas-Zaragoza made changes due to how he "feels/felt" he was addressed, the "facial expression / looks" of plaintiff, stating 95% percent of plaintiffs coworkers disapprove of plaintiff, and his determination of the lack of respect the plaintiff. Plaintiff directly and promptly raised the issue with Marlando Meriwether manager and Mark Hamlin director at the time which they had Cassillas-Zaragoza correct and revise his wording. In violation of HR Policy Meriwether nor Hamlin notified HR. Plaintiff requested and was denied to opportunity to respond to the revised report.

46. Plaintiff alleges that his supervisor spent **less than five percent (5%) of time on the production floor,** a fact known to management and in addition to the attendance records, yet relied on metrics purporting to evaluate floor-level effectiveness without accounting for Plaintiff's time spent in "gray areas," special projects, or engineering-related tasks. A

47. Plaintiff alleges that projects he completed were known to his supervisor but were excluded from performance calculations because the supervisor's metrics did not capture that work. In violation of policy, the performance metrics where based on what he passed through QA rather than what QA non-compliance he caught, fixed and trained personnel. Applied advertises quality first but that is not how Mr Cassillas-Zaragoza evaluated Plaintiffs performance at his "performance review."

48. Plaintiff alleges that despite reduced scheduled hours and days, he remained competitively placed in output and effectiveness, including achieving approximately **90% floor effectiveness**

prior to changes in expectations and enforcement. Despite other team members effectiveness of less than 2%.

49. Plaintiff further alleges that Applied issued shifting directives from upper management regarding focus and priorities that were inconsistent with the alleged standards cited in Plaintiff's termination.

50. Plaintiff alleges that the termination decision relied on an incomplete or selectively presented version of termination policies that differed from the policies originally presented and acknowledged by Plaintiff at hire.

51. The Performance Review further reflected management-directed edits and removals, undermining its reliability. This is also reflected in the response from the case worker during plaintiffs request for unemployment after contacting Applied Materials regarding eligibility of benefits. Mr Cassillas-Zaragoza also claimed 15 unexcused work days in later conversations which were approved by management.

52. On or about **August 22, 2023**, Applied issued documentation placing Plaintiff into the **2023 U.S. Performance Initiative**, identifying August 22, 2023 as Plaintiff's last day at work and imposing a 60-day non-working paid notice period.

53.    During this time, Plaintiff contacted attempted to contact Sabrina of HR and having to go through Manager Marlando Meriwether on the details of how Plaintiff might dispute my termination as well as remaining benefits. Sabrina of HR gave false information regarding information in said separation packet which she later claimed she was unsure as she never seen said packet. Additionally, plaintiff informed it was a "permanent" ban from Applied Materials for employment and there would be no further discussion on the matter.

54. From **August 23 through October 23, 2023**, Plaintiff was denied access to Applied's systems while internal and contractual deadlines continued to run.

55. Applied provided inconsistent explanations for Plaintiff's termination, alternately citing misconduct, low performance, and participation in a performance initiative.

**F. Interference With Internal Remedies and EEOC Rights**

56. Following termination, Plaintiff requested documents, clarification, and internal review consistent with Applied's HR policies and the Employment Agreement.

57. Applied delayed responses, provided incomplete separation materials, and failed to provide the internal review process described in its policies.

58. Plaintiff alleges that Applied's failure to present the full termination policy, its reliance on incomplete or shifting standards, and its inconsistent enforcement of supervisory authority deprived Plaintiff of the contractual protections promised under the Employment Agreement and incorporated HR policies.

59. Plaintiff further alleges that these inconsistencies and omissions contributed to confusion regarding the basis and finality of his termination, reinforcing Plaintiff's reasonable reliance on internal review processes and supporting equitable tolling.

60. While Applied delayed and obstructed Plaintiff's access to information, statutory filing deadlines—including EEOC deadlines—continued to run without notice to Plaintiff.

61. On **October 6, 2025**, Plaintiff submitted written correspondence to the EEOC requesting that his complaint be placed on record and asserting that Applied's arbitration and HR practices interfered with employees' civil rights

**G. Damages**

62. As a direct and proximate result of Applied's acts and omissions, Plaintiff suffered loss of employment, loss of income and benefits, emotional distress, and impairment of statutory and contractual rights.

## VI.  CAUSES OF ACTION

### COUNT I

**Breach of Contract (Texas Law)**

63. Plaintiff incorporates by reference Paragraphs **1-50** as if fully set forth herein.

64. Plaintiff and Applied entered into a valid and enforceable **Employment Agreement**, which incorporated Applied's Human Resources policies, including **HR Policy 6-01 (Open Door Policy)** and **HR Policy 6-02 (Discipline, Job Performance, and Standards of Conduct)** .

65. Under the Employment Agreement and incorporated HR policies, Applied was contractually obligated to:

a. Administer discipline and performance management in accordance with HR Policy 6-02;

b. Provide employees a fair opportunity to respond to allegations before termination; and

c. Provide access to internal review and dispute-resolution procedures under HR Policy 6-01.

66. Applied breached the Employment Agreement by, among other acts and omissions:

a. Relying on disputed and previously cleared incidents in issuing discipline and terminating Plaintiff;

b. Terminating Plaintiff without providing a meeting, hearing, or opportunity to respond;

c. Failing to follow the procedures mandated by HR Policies 6-01 and 6-02; and

d. Providing inconsistent and shifting explanations for Plaintiff's termination.

67. Applied's breaches were material and deprived Plaintiff of the benefit of the contractual disciplinary and review procedures for which he bargained.

68. As a direct and proximate result of Applied's breach, Plaintiff suffered damages including lost wages, lost benefits, and consequential damages.

69. Plaintiff incorporates by reference Paragraphs **1-50** as if fully set forth herein.

70. Plaintiff and Applied entered into a valid and enforceable Employment Agreement incorporating Applied's HR policies, including **HR Policy 6-01 (Open Door Policy)** and **HR Policy 6-02 (Discipline, Job Performance, and Standards of Conduct)**.

71. These policies constituted enforceable contractual obligations requiring Applied to:

a. Apply discipline based on accurate, complete, and consistently enforced standards;

b. Provide notice and a meaningful opportunity to respond before termination;

c. Administer discipline through properly authorized supervisors; and

d. Provide access to internal review and appeal mechanisms.

72. Applied breached the Employment Agreement and incorporated HR policies by, among other acts:

a. Allowing an individual without supervisory authority to exercise de facto supervisory control over Plaintiff and later retroactively relying on that individual's assessments after formalizing his supervisory role;

b. Relying on disputed, previously cleared, or selectively enforced incidents in issuing discipline and termination;

c. Applying performance metrics that failed to account for Plaintiff's actual duties, project work, and floor assignments;

d. Failing to present or apply the full termination policy acknowledged by Plaintiff at hire; and

e. Terminating Plaintiff without the notice, meeting, and internal review required by HR Policies 6-01 and 6-02.

73. Applied's breaches were material and deprived Plaintiff of the contractual protections and fair disciplinary process for which he bargained.

74. As a direct and proximate result of Applied's breach, Plaintiff suffered damages including lost wages, lost benefits, and consequential damage

## COUNT II

**Discrimination and Failure to Accommodate Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)**

75. Plaintiff incorporates by reference Paragraphs **1-50** as if fully set forth herein.

76. Plaintiff is a qualified individual with a disability within the meaning of the ADA, including a heart-related medical condition.

77. Plaintiff was able to perform the essential functions of his position with or without reasonable accommodation.

78. Applied was aware of Plaintiff's disability and medical condition, including Plaintiff's COVID-related quarantine and related limitations.

79. Plaintiff engaged in protected activity by requesting medical leave and accommodation.

80. Applied subjected Plaintiff to adverse employment actions, including heightened discipline and termination.

81. Applied failed to engage in a good-faith interactive process and failed to reasonably accommodate Plaintiff's disability.

82. Plaintiff's disability and need for accommodation were motivating factors in Applied's decision to discipline and terminate Plaintiff.

83. Applied's conduct violated the ADA.

84. Plaintiff incorporates by reference Paragraphs **1-50** as if fully set forth herein.

85. Plaintiff is a qualified individual with a disability within the meaning of the ADA, including a heart-related medical condition and respiratory impairments.

86. Plaintiff was able to perform the essential functions of his position with or without reasonable accommodation.

87. Applied was aware of Plaintiff's medical condition, including Plaintiff's respiratory issues and his disclosure that he was undergoing evaluation for potential heart failure.

88. Plaintiff engaged in protected activity by requesting medical leave, flexibility, and a brief delay in providing medical documentation while awaiting physician results.

89. Applied failed to engage in a good-faith interactive process and instead escalated discipline and scrutiny after Plaintiff's medical disclosure.

90. The temporal proximity between Plaintiff's medical disclosure and subsequent discipline and termination supports an inference that Plaintiff's disability and need for accommodation were motivating factors in Applied's actions.

91. Applied's conduct constitutes discrimination and failure to accommodate in violation of the ADA.

## COUNT III

### Retaliation

### Americans with Disabilities Act (42 U.S.C. § 12203)

92. Plaintiff incorporates by reference Paragraphs **1-50** as if fully set forth herein.

93. Plaintiff engaged in protected activity under the ADA, including requesting accommodation, medical leave, and raising concerns regarding the use of cleared or false disciplinary allegations.

94. Applied had knowledge of Plaintiff's protected activity.

95. Applied subjected Plaintiff to materially adverse actions, including:

aa Termination of employment.

96. There is a causal connection between Plaintiff's protected activity and Applied's adverse actions, as evidenced by temporal proximity and Applied's shifting explanations for termination.

97. Applied's actions would dissuade a reasonable employee from engaging in protected activity.

98. Applied's conduct constitutes unlawful retaliation in violation of the ADA.

99. Plaintiff incorporates by reference Paragraphs **1-50** as if fully set forth herein.

100.   Plaintiff engaged in protected activity under the ADA, including requesting accommodation, seeking medical leave, and disclosing serious medical conditions to management.

101.   Applied had knowledge of Plaintiff's protected activity.

102.   Applied subjected Plaintiff to materially adverse actions, including:

a. Labeling Plaintiff "non-compliant" within hours of a request related to medical documentation;

b. Heightened scrutiny and selective enforcement of performance and attendance standards; and

c. Termination of Plaintiff's employment.

103. The close temporal proximity between Plaintiff's protected activity and the adverse actions, combined with Applied's reliance on flawed and shifting performance metrics, establishes a causal connection.

104. Applied's conduct would deter a reasonable employee from requesting accommodation or engaging in protected activity.

105. Applied's actions constitute unlawful retaliation in violation of the ADA.

## COUNT IV

### Interference With Non-Waivable Federal Rights

### (ADA, Title VII, and EEOC-Enforced Statutes)

106. Plaintiff incorporates by reference Paragraphs 1-50 as if fully set forth herein.

107. Federal law prohibits employers from interfering with, restraining, or denying an employee's right to file a charge, participate in, or communicate with the EEOC.

108. Applied's Employment Agreement expressly preserved Plaintiff's right to communicate with governmental agencies and file charges with the EEOC Following Plaintiff's termination, Applied:

a. Delayed and obstructed Plaintiff's access to documents and information necessary to evaluate and pursue claims;

b. Failed to provide the internal review procedures promised under its HR policies; and

c. Allowed statutory filing deadlines to run while withholding information and process.

109.    Applied's conduct interfered with Plaintiff's ability to timely exercise his non-waivable federal rights.

110.    Applied's actions constitute unlawful interference and retaliation under EEOC-enforced statutes and are void as against public policy.

111.    Plaintiff incorporates by reference Paragraphs **1-50 1–30 and 27A–27B** as if fully set forth herein.

112.    Federal law prohibits employers from interfering with an employee's right to file a charge, participate in an investigation, or communicate with the EEOC.

113.    Applied's Employment Agreement expressly preserved Plaintiff's right to communicate with governmental agencies and file charges with the EEOC.

114.    Applied interfered with Plaintiff's non-waivable federal rights by:

a. Failing to provide the full termination and review policies applicable to Plaintiff;

b. Administering incomplete or inconsistent internal review procedures;

c. Creating confusion regarding the basis and finality of Plaintiff's termination; and

d. Allowing statutory filing deadlines to run while Plaintiff reasonably relied on promised internal processes.

115.    Applied's conduct had the purpose and effect of discouraging or delaying Plaintiff's access to EEOC processes.

116.    Applied's actions constitute unlawful interference and retaliation under EEOC-enforced statutes and are void as against public policy.

**COUNT V**

## Declaratory Relief

117.    Plaintiff incorporates by reference Paragraphs **1-105** as if fully set forth herein.

118.    An actual controversy exists regarding:

a. Whether Applied breached the Employment Agreement and incorporated HR policies;

b. Whether Applied's disciplinary and termination practices violated federal law; and

c. Whether Applied's arbitration and HR practices unlawfully interfere with non-waivable statutory rights.

119.    Plaintiff seeks a declaration clarifying the parties' rights and obligations under the Employment Agreement and applicable federal law.

120.    Plaintiff incorporates by reference Paragraphs **1-105** as if fully set forth herein.

121.    An actual controversy exists regarding:

a. Whether Applied breached the Employment Agreement and incorporated HR policies;

b. Whether Applied discriminated and retaliated against Plaintiff based on disability;

c. Whether Applied's performance metrics and supervisory practices were pretextual; and

d. Whether Applied interfered with Plaintiff's non-waivable federal rights.

122.    Plaintiff seeks declaratory relief clarifying the parties' rights and obligations under the Employment Agreement and applicable federal law.

## EQUITABLE TOLLING AND ESTOPPEL

123.    Plaintiff incorporates by reference Paragraphs **1-110** as if fully set forth herein.

124.    Federal and Texas law permit **equitable tolling** where an employer's conduct prevents a plaintiff from timely asserting statutory rights.

125. Applied exercised exclusive control over the documents, explanations, and internal procedures necessary for Plaintiff to understand the basis, timing, and scope of his claims.

126. Following Plaintiff's termination, Applied:

a. Failed to provide the internal review process promised under HR Policies 6-01 and 6-02;

b. Provided incomplete, delayed, or misleading separation documentation; and

c. Failed to disclose that statutory filing deadlines continued to run while internal processes were purportedly pending.

127. Applied affirmatively encouraged Plaintiff to rely on internal policies and processes while simultaneously failing to administer those processes in good faith.

128. Applied's conduct reasonably caused Plaintiff to delay filing administrative charges while awaiting information and procedures Applied was contractually obligated to provide.

129. Plaintiff exercised reasonable diligence by repeatedly requesting documents, clarification, and internal review, and by ultimately contacting the EEOC to place his complaint on record.

130. Applied is **equitably estopped** from asserting any statute-of-limitations or timeliness defense based on delays it caused or induced.

131. Any applicable limitations period should be equitably tolled until Plaintiff had a reasonable opportunity to discover the facts underlying his claims and pursue relief without obstruction.

## ANTICIPATION AND RESPONSE TO

## ARBITRATION AND RULE 12 DEFENSES

**A. Arbitration Does Not Bar Plaintiff's Claims**

132.    Plaintiff does not contest the existence of an arbitration agreement and brings this action in a manner consistent with the Federal Arbitration Act.

133.    The Employment Agreement expressly preserves Plaintiff's right to file charges and communicate with governmental agencies, including the EEOC.

134.    Plaintiff's claims include allegations of **statutory interference, retaliation, and discrimination**, which are not waived by agreement and may not be contractually restricted.

135.    To the extent arbitration applies, Applied materially breached the Employment Agreement by failing to follow the disciplinary and review procedures that formed part of the consideration for arbitration.

136.    A party that materially breaches a contract may not enforce favorable provisions of that same contract to the detriment of the non-breaching party

137.    Alternatively, Applied's obstruction of the internal procedures it encouraged Plaintiff to exhaust renders enforcement of the arbitration provision **unconscionable as applied**.

## B. Plaintiff Has Plausibly Stated Claims Under Rule 8

138.    Plaintiff has plausibly alleged:

   a. The existence of a valid contract;

   b. Specific contractual obligations;

   c. Specific acts and omissions constituting breach; and

   d. Resulting damages

139.    Plaintiff has further plausibly alleged all elements of ADA discrimination and retaliation, including protected activity, employer knowledge, adverse action, and causal connection.

140. Plaintiff has alleged concrete facts demonstrating interference with non-waivable federal rights, including delay, obstruction, and deprivation of promised procedures.

141. Plaintiff's allegations are supported by documentary evidence and contemporaneous written records, not mere conclusory assertions.

**C. Applied Is Not Entitled to Dismissal or Compelled Arbitration at the Pleading Stage**

142. At the pleading stage, all reasonable inferences must be drawn in Plaintiff's favor.

143. Factual disputes regarding:

a. The adequacy and good-faith administration of HR procedures;

b. The truth or falsity of disciplinary allegations;

c. The cause and timing of delay; and

d. The applicability of equitable tolling

cannot be resolved on a motion to dismiss or motion to compel arbitration.

144. Plaintiff is entitled to discovery regarding Applied's internal communications, policy enforcement practices, and handling of Plaintiff's termination and internal complaints.

145. Accordingly, dismissal under Rule 12(b)(6) or summary enforcement of arbitration would be premature.

**ADDITIONAL ALLEGATIONS REGARDING**

**PATTERN, PRACTICE, AND WILLFULNESS**

146. Plaintiff alleges on information and belief that **Applied Materials has engaged in similar conduct toward other employees in recent months**, including the use of internal HR processes and arbitration provisions in a manner that delays, obstructs, or interferes with employees' ability to timely assert statutory rights.

147.    Plaintiff has learned that other Applied employees have experienced materially similar sequences of events, including:

a. Termination or separation decisions preceded by disputed or shifting performance rationales;

b. Failure to follow Applied's own written HR disciplinary and review procedures;

c. Delays or obstructions in providing documents or internal review while statutory deadlines continued to run; and

d. Reliance on arbitration provisions after internal processes were not administered in good faith.

148.    These similar incidents occurred **within the months immediately preceding and following Plaintiff's termination**, indicating that Applied's conduct toward Plaintiff was not isolated or inadvertent.

149.    Applied's repeated use of the same practices across multiple employees demonstrates a **pattern or practice** of conduct that is knowing, intentional, or carried out with reckless disregard for employees' contractual and statutory rights.

150.    Applied's pattern of conduct supports an inference that:

a. Applied's stated reasons for Plaintiff's termination were pretextual;

b. Applied acted willfully and in bad faith; and

c. Equitable tolling, estoppel, and enhanced remedies are warranted.

151.    Discovery is required to identify the full scope of Applied's pattern and practice, including similarly situated employees, internal HR communications, and Applied's handling of internal complaints and arbitration enforcement.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief including, but not limited to:

    a. Compensatory damages;

    b. Back pay and front pay;

    c. Lost benefits;

    d. Attorneys' fees and costs;

    e. Declaratory and injunctive relief; and

    f. All other relief to which Plaintiff may be entitled.

Dated: 2·26·2026

PLAINTIFF

Alpacino Monreal
*Pro Se*
5705 Rain Creek Pkwy
Alpacino Monreal
19949 Blake Manor Rd
Manor, Texas

512-913-7656